J-S65040-13

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| CHRISTOPHER L. SWARTZFAGER | |
| Appellant | No. 929 WDA 2013 |

Appeal from the PCRA Order of May 3, 2013
In the Court of Common Pleas of Venango County
Criminal Division at No.: CP-61-CR-0000580-1998

BEFORE: FORD ELLIOTT, P.J.E., OTT, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                     **FILED AUGUST 25, 2014**

Christopher L. Swartzfager appeals from the May 3, 2013 order denying his petition for relief pursuant to the Post-Conviction Relief Act ("PCRA"), 42 Pa.C.S. §§ 9541-46. We affirm.

On June 9, 1998, Swartzfager, then nineteen years old, was walking along railroad tracks with an eleven-year-old girl. Swartzfager threw the girl to the ground and pulled down her pants, exposing her genitals. Swartzfager lifted her legs and forced his penis against her genitals. Swartzfager ceased the assault when the girl informed him that he was hurting her. Thus, penetration did not occur. On September 29, 1998, based upon these facts, Swartzfager pleaded guilty to one count of criminal attempt—rape. **See** 18 Pa.C.S. §§ 901(a), 3121. On November 23, 1998,

Swartzfager was sentenced to sixty-six to two hundred forty months' incarceration.

On October 11, 2000, in an unpublished memorandum, we rejected Swartzfager's challenge to the discretionary aspects of his sentence on direct appeal. *See Commonwealth v. Swartzfager*, No. 761 WDA 1999, slip op. at 1, 3 (Pa. Super. Oct. 11, 2000). Swartzfager did not seek allowance of appeal from the Pennsylvania Supreme Court.

On October 19, 2001, Swartzfager filed a *pro se* PCRA petition. Counsel was appointed to represent Swartzfager during the PCRA proceedings. After reviewing the case, counsel concluded that Swartzfager's PCRA petition was untimely. Hence, counsel filed a no-merit letter and a motion to withdraw as counsel. On April 2, 2003, the PCRA court granted counsel's motion, and issued a notice of intent to dismiss Swartzfager's PCRA petition pursuant to Pa.R.Crim.P. 907. Rather than responding to the notice, Swartzfager filed a notice of appeal. On September 22, 2003, this Court quashed Swartzfager's appeal as interlocutory. *See Commonwealth v. Swartzfager*, No. 830 WDA 2003 (*per curiam*). No final order was entered dismissing the petition.

In the interim, Swartzfager was released on parole on October 6, 2009. Upon release, Swartzfager was informed that he would have to comply with the registration and notification requirements of Megan's Law, *see generally* 42 Pa.C.S. §§ 9791, *et seq*. Swartzfager violated his parole and currently is incarcerated on the parole revocation. Upon release,

- 2 -

Swartzfager will be required to comply with the registration and notification requirements of the Sex Offender Registration and Notification Act ("SORNA"), **see generally** 42 Pa.C.S. §§ 9799.10, *et seq*. Notably, neither of these statutes applied to Swartzfager at the time that he was sentenced in 1998.

On December 29, 2011, Swartzfager filed a second *pro se* PCRA petition, which the PCRA court dismissed after providing a Rule 907 notice. On appeal, we determined that Swartzfager's October 19, 2001 PCRA petition was timely, and that no final order ever had been entered dismissing the petition. Thus, we concluded that Swartzfager's December 29, 2011 PCRA petition should be treated as an amendment to his timely-filed, still open 2001 PCRA petition. **Commonwealth v. Swartzfager**, 59 A.3d 616, 620-21 (Pa. Super. 2012). We remanded the case for the appointment of new counsel, and for a hearing to determine whether considering the 2011 PCRA petition as an amendment to the 2001 filing would cause prejudice to the Commonwealth. **Id.**

On April 25, 2013, the PCRA court held the mandated hearing. On May 3, 2013, that learned court issued its Opinion and Order dismissing Swartzfager's PCRA petition. On May 28, 2013, Swartzfager filed a notice of appeal. In response, the PCRA court directed Swartzfager to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). On June 17, 2013, Swartzfager timely filed a Rule 1925(b) statement. On June 20, 2013, the PCRA court entered a Pa.R.A.P. 1925(a) statement,

wherein it adopted the reasons for dismissing Swartzfager's petition that the court set forth in its May 3, 2013 "Opinion and Order."

Counsel for Swartzfager initially filed with this Court an **Anders**[1] brief and a petition to withdraw as counsel. By memorandum, we rejected counsel's **Anders** brief and his motion to withdraw as counsel. We remanded this case for counsel to reconsider the matter in light of this Court's *en banc* decision in **Commonwealth v. Hainesworth**, 82 A.3d 444 (Pa. Super. 2013) (*en banc*), and because counsel failed to adequately address whether SORNA and Megan's Law are sufficiently alike to justify counsel's conclusion that the application of SORNA's requirements to Swartzfager constitute unassailable collateral consequences to a plea or conviction, as has always been the case with Megan's Law's requirements. We instructed counsel to evaluate these issues, and, after careful consideration, decide whether to file a merits brief or another no-merit brief addressing these issues in more detail. Counsel has filed a merits brief

_____

[1] **See Anders v. California**, 386 U.S. 738 (1967). Apparently, counsel operated under the mistaken belief that an **Anders** brief is the proper mechanism when seeking to withdraw on appeal from the denial of PCRA relief. In fact, the proper mechanism under such circumstances is a **Turner/Finley** brief. **See Commonwealth v. Turner**, 544 A.2d 927 (Pa. 1988); **Commonwealth v. Finley**, 550 A.2d 213 (Pa. Super. 1988). However, because an **Anders** brief provides greater protection to a criminal appellant, we accepted counsel's **Anders** brief in lieu of a **Turner/Finley** no-merit brief. **Commonwealth v. Widgens**, 29 A.3d 816, 817 n.2 (Pa. Super. 2011); **Commonwealth v. Fusselman**, 866 A.2d 1109, 1111 n.3 (Pa. Super. 2004).

addressing the applicability of **Hainesworth** to this case. However, counsel has not addressed whether SORNA produces the same legal conclusions that Megan's Law has over the years.[2]

We now turn to the sole issue raised by counsel in his merits brief to this Court: "Whether the PCRA court erred as a matter of law or abused its discretion in determining that [Swartzfager] had to register under Megan's Law[,] now SORNA?" Brief for Swartzfager at 5.

Our standard of review of an order dismissing a PCRA petition is well-settled:

> We review an order dismissing a petition under the PCRA in the light most favorable to the prevailing party at the PCRA level. This review is limited to the findings of the PCRA court and the evidence of record. We will not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. This Court may affirm a PCRA court's decision on any grounds if the record supports it. We grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. Further, where the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary.

_____

[2] By filing a merits brief, counsel was entitled to select the issues that he believed warranted review by this Court. Regardless, we note that this Court recently has held that SORNA, as historically has been the case with Megan's Law, is not punitive, and constitutionally can be applied retroactively. **See Commonwealth v. Perez**, --- A.3d ---, 2014 PA Super 142, at *10 (Pa. Super. 2014). Hence, a constitutional challenge to the retroactive application of SORNA to Swartzfager would prove meritless pursuant to **Perez**.

*Commonwealth v. Rykard*, 55 A.3d 1177, 1183 (Pa. Super. 2012) (quoting *Commonwealth v. Ford*, 44 A.3d 1190, 1194 (Pa. Super. 2012); internal citations omitted).

Swartzfager presently argues that, pursuant to *Hainesworth*, the PCRA court erred by upholding the requirement that Swartzfager must register and comply with SORNA. Swartzfager contends that, at the time he was sentenced in 1998, both the trial court and the assistant district attorney discussed the fact that the offense to which Swartzfager pleaded guilty was not subject to sexual offender reporting and registration. Brief for Swartzfager at 8. As such, Swartzfager maintains that such requirements were not part of his initial plea agreement, and that *Hainesworth* mandates upholding those terms, which would prohibit application of SORNA upon his release from prison.

Swartzfager also recognizes that, in *Commonwealth v. Partee*, 86 A.3d 245, 249 (Pa. Super. 2014), this Court held that, because a violation of probation results in an entirely new sentence, the initial terms of a plea bargain that would have been subject to *Hainesworth*'s dictates need not be honored. However, Swartzfager notes that his current incarceration is due to a parole violation, not a probation violation. Because a parole violation commits an offender to prison to continue serving his original sentence, unlike a probation violation that results in a new sentence, Swartzfager argues that his current violation falls outside of *Partee*, and the initial plea terms should remain subject to *Hainesworth*.

We begin with **Hainesworth**, in which we considered the effect that SORNA had on plea negotiations that included agreements pertaining to the registration and notification requirements for sexual offenders. In **Partee**, we set forth a comprehensive discussion of **Hainesworth**, which follows:

> [I]n **Hainesworth**, 82 A.3d 444 (Pa. Super. 2013), [] this Court specifically enforced a negotiated plea agreement that did not require the defendant to report as a sex offender under Megan's Law, despite subsequent amendments to the statute that would have subjected him to reporting requirements. Hainesworth entered a negotiated guilty plea to three counts each of statutory sexual assault and indecent assault, and one count each of indecent assault and criminal use of communication facility in February 2009. None of these convictions required registration under the then-prevailing version of Megan's Law, 42 Pa.C.S. § 9791. Other charges that would have imposed a registration requirement were withdrawn by the Commonwealth pursuant to the plea negotiations.
>
> Hainesworth filed a motion seeking to terminate supervision effective one week prior to the effective date of SORNA. The trial court denied the petition to terminate supervision, but held that application of SORNA's registration requirements to Hainesworth violated due process.
>
> On appeal, this Court, sitting *en banc*, concluded first that Hainesworth correctly framed the issue as one of contract law, and applied the standard of review applicable to whether a plea agreement had been breached: "what the parties to this plea agreement reasonably understood to be the terms of the agreement." **Hainesworth**, *supra* (quoting **Commonwealth v. Fruehan**, 557 A.2d 1093, 1095 (Pa. Super. 1989)). We look to the "totality of the surrounding circumstances" and "[a]ny ambiguities in the terms of the plea agreement are construed against the [Commonwealth]." **Commonwealth v. Kroh**, 654 A.2d 1168, 1172 (Pa. Super. 1995). The dispositive question was "whether registration was a term of the bargain struck by the parties." **Hainesworth**, 82 A.3d at 448. We examined the record. The terms of the plea agreement were set forth and included a discussion of the fact that the offenses to which the defendant was pleading guilty did not require registration and

supervision as a sex offender. We distinguished **Commonwealth v. Benner**, 853 A.2d 1068 (Pa. Super. 2004) (Benner was always subject to a reporting requirement, albeit ten years instead of a lifetime, and the record did not support Benner's contention that he had bargained for non-registration as a term of his plea), and held that the plea agreement "appears to have been precisely structured so that Hainesworth would not be subjected to a registration requirement." **Hainesworth**, 82 A.3d at 448.

**Partee**, 86 A.3d at 247-48 (citations modified).

Hence, the operative inquiry for **Hainesworth** purposes is whether the registration and reporting requirements attendant to Megan's Law or SORNA were negotiated terms of the plea bargain entered into by the parties. If such terms were a part of the bargain, then, per **Hainesworth**, that agreement will be enforced as such. If they were not, then **Hainesworth** is inapplicable and the subsequent application of SORNA will not be precluded by the plea bargain.

At Swartzfager's guilty plea, the Commonwealth stated on the record the terms of the plea bargain as follows:

> C.R. 580, of 1998, pursuant to a written plea agreement with the Commonwealth, Mr. Swartzfager will be pleading guilty to Count 4, Criminal Attempt to Commit Rape, and it is a Felony 1. The offense gravity score is 11. Commonwealth agrees to nol pros [*sic*] Counts 1, 2, 3, and 5.

Notes of Testimony ("N.T."), 9/29/1998, at 15. The trial court then explained to Swartzfager the potential maximum sentence associated with the crime to which he pleaded guilty: "Attempted Rape as it is charged is a Felony 1 and carries a maximum of $25,000 in fines and 20 years in jail. So

that carries a maximum permissible sentence of 10 to 20 years." *Id.* at 24. Once the court explained the maximum possible sentence, the court raised the potential applicability of Megan's Law. The following exchange occurred between the trial court and assistant district attorney ("ADA"):

THE COURT: [. . . assistant public defender] asked me earlier in chambers whether I felt Megan's Law applied to this. I don't think it does, but I have to say I spent about a minute on it. Do you have a position on it?

[ADA]: Not at this time, Your Honor. I didn't – I haven't even considered that.

THE COURT: I don't think it applies, but I am not sure. If it does, we may have to go through those colloquy questions again.

But, I'm required to send out the notices and so on within 72 hours, so I don't intend to do that unless someone convinces me it does apply.

[ADA]: I will let you know as soon as possible.

THE COURT: Again, I'm not absolutely sure. It something I should know, but I don't.

*Id.* at 24-25.

The trial court then identified the written guilty plea agreement, which Swartzfager signed. Notably, the written agreement did not contain any terms relevant to Megan's Law or otherwise to sexual offender reporting or registration. *Id.* at 25-26. The trial court asked Swartzfager if there was anything else that he believed was, or should have been, in the agreement;

Swartzfager responded in the negative. *Id.* at 28. At last, the trial court accepted Swartzfager's guilty plea. *Id.* at 32.

It is apparent from the guilty plea colloquy that registration and reporting requirements pursuant to Megan's Law (or otherwise) were not material terms of Swartzfager's guilty plea. Such requirements were not part of the plea as explained in open court and on the written plea agreement. Additionally, the parties did not even know whether Swartzfager, by taking the plea as stated, was subject to those requirements. In other words, logically, such terms cannot be said to be part of a plea agreement when the discussion on the record demonstrates that no one even knew if they applied. Moreover, when given the opportunity to express his belief that such terms, or any other terms for that matter, should have been part of the plea agreement as codified in the written plea agreement, Swartzfager made no mention of such requirements. Consequently, the plea record does not support Swartzfager's argument that such requirements were a part of his agreement, and **Hainesworth** is therefore inapplicable.

We briefly turn our attention to Swartzfager's argument that **Partee** does not control this case. We need not delve deeply into the question of whether **Partee** should be extended to parole violations, because Swartzfager's argument necessarily fails without the need to address this complicated question. Indeed, Swartzfager argues that, because he is currently incarcerated on a parole violation, instead of a probation violation,

- 10 -

the original terms of his plea agreement should control for purposes of whether he is subject presently to SORNA's registration and reporting requirements. However, as we determined above, the original terms of his plea agreement do not contemplate such requirements, and it is quite clear that his plea was not conditioned upon the applicability, or, perhaps more importantly, the inapplicability of such requirements. Thus, regardless of whether **Partee** applies or not, Swartzfager is not entitled to relief, and the application of SORNA to him upon his release is not unlawful.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/25/2014